UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN THE MATTER OF THE APPLICATION | : | CASE NO. _____ |
| OF THE UNITED STATES OF AMERICA | : | |
| FOR A SEARCH WARRANT FOR THE | : | |
| PREMISES LOCATED AT | : | |
| 1349 SPRING ROAD, NORTHWEST | : | |
| WASHINGTON, D.C.  20010 | : | **FILED UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

Justin Holgate, Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), Washington Field Office ("WFO"), Washington, D.C., (hereinafter "your affiant") being duly sworn, deposes and states as follows:

**GENERAL BACKGROUND**

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510 (7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to investigate and to make arrests for offenses enumerated in Section 2516 of Title 18 and 21, United States Code.

2. Your affiant is a Special Agent with the FBI assigned to the Washington Field Office's Violent Crimes Task Force. Your affiant has been an FBI Special Agent for nearly four years and previously worked as a police officer in Little Rock, Arkansas for more than three years. Your affiant has investigated crimes, to include bank robberies and armored car robberies, and has executed numerous search warrants. Your affiant has also gained knowledge in conducting criminal investigations through training received during his time in law enforcement.

3. Based on my experience and training, I am aware that:

   a. Those involved in criminal activities commonly maintain at their residences, and on their property, tools and other implements they used during or in furtherance

of the commission of crime.

  b. Those involved in criminal activities commonly maintain at their residences, and on their property, books, records, receipts, computer diskettes, computers, notes, ledgers, airline tickets, money orders, and other papers and electronic records relating to their criminal activities.

  c. Those involved in criminal activities commonly maintain books, papers, documents, and electronic records in secure locations within their residences and their property, so they can have ready access to such information.

  d. Those involved in criminal activities attempt to legitimize the proceeds from their criminal activities. They often accomplish this by using the services of foreign and domestic banks and various financial institutions, and real estate brokers. Books and papers relating to such efforts, including but not limited to, cashier checks, money orders, telegrams, letters of credit and ledgers, are maintained in the residences and on the property of those involved in criminal activities.

  e. Those involved in criminal activities take, or cause to be taken, photographs of themselves, their associates, property derived from their criminal activities, and their products, including with cellular telephones, and that such photographs are often kept in their residences or stored in electronic format on computers and computer thumb drives.

  f. Those involved in criminal activities very often place assets, including real and personal property, such as vehicles, in names other than their own to avoid the detection and forfeiture of such assets by government agencies and continue to use these assets and to exercise dominion and control over them even though the assets are normally owned by them.

g. Those involved in criminal activities usually have in their possession weapons. These weapons often consist of knives, guns, rifles, pistols, revolvers, shotguns, assault-type weapons, and other firearms as well as ammunition for any handgun, shotgun, and/or rifles. They possess these items for protection against robbery and also for use during and in furtherance of the commission of criminal offenses.

4. This affidavit is based, in part, upon information provided to me by other Special Agents of the FBI and officers of the Washington, D.C. Metropolitan Police Department (MPD), witnesses, physical surveillance, and other information gathered during the course of this investigation. Since this affidavit is being submitted for the limited purpose of obtaining a search warrant for a residence, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts which I believe are necessary to establish probable cause for the issuance of this search warrant.

5. As a result of my personal participation in this investigation, as well as through interviews with and analysis of reports submitted by other Special Agents of the FBI and officers of the MPD and other law enforcement agencies who are involved in this investigation, I am familiar with all aspects of this investigation. On the basis of this familiarity, and on the basis of other information which I have reviewed and determined to be reliable, I allege the facts to show there is probable cause to believe that fruits and evidence of offenses involving bank robbery, in violation of Title 18, United States Code, § 2113(a), will be found located at 1349 Spring Road, N.W., Washington, D.C. 20010, as further described in Attachment A.

6. Attachment B describes the matters and things to be seized. All statements made in Attachments A and B are adopted into the body of this Affidavit as if fully set forth herein.

## THE INVESTIGATION

7.      On September 21, 2013, a male subject, later identified as **NORMAN ELLIS**, entered the Signal Financial Federal Credit Union located at 1400 Irving Street NW, Washington, D.C.  ELLIS passed a demand note to a teller and gestured as if he had a gun. ELLIS exited the bank after receiving money, with a loss to the credit union of $2,481.00. ELLIS was described as a black male in his 40s or 50s, 5'9"-5'10", slim build, possibly a mole on the right side of his face, wearing a black and gray jacket and a black baseball cap. Specifically, the jacket was black in color with a wide gray stripe across the back the shoulders and continuing down the backs of the arms.  The baseball cap was black in color with a white or silver logo on the front.

8.      Following the robbery, investigators reviewed surveillance photographs provided by Signal Financial.  The photographs showed ELLIS as he committed the robbery.  The photographs also showed ELIIS carrying a black bag with a black strap.  Investigators also reviewed surveillance video provided by Washington Metropolitan Area Transit Authority (Metro Transit).

9.      The Metro Transit footage shows ELLIS entering the Columbia Heights Metro Station approximately four minutes after the robbery.  This Metro station is within close proximity of the credit union.  Shortly after entering the Metro station, ELLIS is seen wearing what appears to be the same jacket and carrying the same bag as in the Signal Financial surveillance video.  ELLIS also is seen taking off the jacket worn during the robbery and placing it in the black bag with a black strap.  ELLIS is no longer wearing the baseball cap worn during the robbery.

10. The Metro Transit footage also shows ELLIS using a machine that allows individuals to put money on cards used for traveling on Metro trains. Additional footage shows ELLIS using a card to gain access to the area in which Metro passengers board trains.

11. Investigators obtained the records related to the aforementioned card used by ELLIS shortly after he robbed the credit union. The card showed to be registered to ELLIS, with an address of 1349 Spring Road NW, Washington, D.C. and a phone number of 202-702-6962.

12. Investigators identified the card number for the card used by ELLIS. Furthermore, investigators spoke with ELLIS's probation officer, who advised that the phone number ELLIS provided to her was 202-702-6962, but that the address ELLIS had provided to her was 3914 10th Street, N.E., Washington, D.C. According to an occupant of that residence, ELLIS has not lived at that location for at least a month.

13. The records obtained for ELLIS's card also included a list of transactions that occurred with/on the card. The records show that on 09/21/2013, at 9:50 a.m., money was added to the card at the Columbia Heights Metro Station. Moreover, the records show that on 09/21/20123, at 9:51 a.m., the card was used to gain entry to the area where passengers board Metro trains. These records match up with aforementioned Metro footage of the individual who robbed the Financial Signal branch.

14. Investigators obtained photographs of the aforementioned ELLIS taken following an arrest in 2012. The photographs were then compared to surveillance still shots of the subject who robbed the credit union. ELLIS shows a likeness to the individual in the surveillance footage. He also matches the general description provided by credit union employees who were present when their branch was robbed.

15. Law enforcement conducted surveillance at 1349 Spring Road, N.W., Washington, D.C. 20010 and observed a subject who appeared to be ELLIS at the location. The subject was wearing what appeared to be the same black jacket with a wide gray stripe across the back the shoulders and continuing down the backs of the arms as was worn during the credit union robbery and depicted in the Signal Financial and Metro surveillance videos.

16. Signal Financial credit union deposits are insured by the National Credit Union Association (NCUA).

## **CONCLUSION**

17. Based upon these facts, there is probable cause to believe that there are fruits and evidence, as further described in Attachment B, of bank robbery, in violation of Title 18, United States Code, § 2113(a), will be found located at 1349 Spring Road, N.W., Washington, D.C. 20010 as further described in Attachment A.

Respectfully submitted,

_____
JUSTIN HOLGATE
Special Agent, Federal Bureau of Investigation

Subscribed and sworn to before me this _____ of October, 2013.

_____
THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE